J-A10025-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| HASSAN SHOATZ | : | |
| | : | |
| Appellant | : | No. 3080 EDA 2024 |

Appeal from the Judgment of Sentence Entered June 14, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0005791-2023

BEFORE: STABILE, J., LANE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LANE, J.:                    **FILED JULY 14, 2026**

Hassan Shoatz ("Shoatz") appeals from the judgment of sentence imposed following his negotiated *nolo contendere* plea to theft of immovable property and criminal trespass.[1]  After careful review, we vacate the judgment of sentence and remand for resentencing.

The relevant factual and procedural history of this matter is as follows. In February 2023, Wilfred Anderson Frisby ("the decedent") died, leaving his niece, Yvette Frisby-Veal ("Yvette"), as the administratrix of his estate.  At the time of his death, the decedent owned a house at 1122 North 63rd Street in Philadelphia.  Between February and July of 2023, Yvette visited the house ten or eleven times to check on the house and collect the mail, since the house

---

[*] Former Justice specially assigned to the Superior Court.

[1] *See* 18 Pa.C.S.A. §§ 3921(b), 3503(a)(1)(i).

was vacant. During each visit, she walked through the entire house and visually checked to ensure that several belongings were inside the house, including the urn containing the decedent's ashes, a jewelry box containing multiple diamond rings, and a cello. After every visit, Yvette turned off the lights and thermostat. While the estate was pending, Yvette used the estate's funds to pay for the utility services for the house, including water, electricity, and gas.

In July of 2023, Shoatz unlawfully entered the house and changed the locks. Yvette returned to the house for another visit on July 31, 2023, and encountered Shoatz, who told her that he was the owner. When Yvette walked through the house, she noticed several items were missing, including the urn containing the decedent's ashes, the jewelry box containing multiple diamond rings, and the cello.[2] Yvette subsequently paid to have the locks changed.

Throughout October, November, and December 2023, Yvette returned to the house to pack things up to prepare for the sale of the house. In December of 2023, Yvette received a call from the alarm company and a police officer alerting her that Shoatz was inside the house. When Yvette arrived, she again found Shoatz in the house. Yvette also discovered that, in October

_____

[2] The record does not indicate how Shoatz gained entry to the house, or whether he permitted Yvette to enter the house when she arrived on July 31, 2023.

- 2 -

2023, Shoatz had fraudulently transferred the deed to the house to himself.[3] Yvette hired an attorney to initiate a quiet title action to reconvey the title of the house back to the estate.

Police arrested Shoatz on January 5, 2024, and the Commonwealth charged him with burglary, criminal trespass, and theft of movable property. The Commonwealth then amended the bill of information to include theft of immovable property. On April 30, 2024, Shoatz entered a negotiated *nolo contendere* plea to theft of immovable property and criminal trespass in exchange for the Commonwealth withdrawing the remaining charges. On that same date, the trial court imposed an aggregate sentence of time-served to twenty-three months of incarceration, with immediate parole, followed by two years of probation. As a condition of probation, the court ordered Shoatz not to contest or challenge the transfer of the title back to the estate. Further, the court ordered nominal restitution of $200, to be paid at $50 per month, with further restitution to be determined following a restitution hearing. **See** N.T., 4/30/24, at 26–28; **see also** Sentencing Order, 4/30/24. However, the trial court did not conduct any on-the-record assessment of Shoatz's ability to pay or specify the method of payment by which he was to pay the $50 per month at the sentencing hearing, nor did the trial court t specify — either at

_____

[3] The record does not include any details as to how the deed to the house was transferred to Shoatz, or when Yvette discovered the deed transfer.

sentencing or in its sentencing order — whether the restitution was to be imposed at part of Shoatz's sentence or as a condition of his probation.

The trial court thereafter conducted a restitution hearing on June 14, 2024. Yvette testified that she had paid for the decedent's cremation with her own funds, and that she kept the urn containing his ashes on the dining room table of the house. She explained that when she first encountered Shoatz in the house on July 31, 2023, the urn was gone, as well as a cello, a jewelry box containing multiple diamond rings, and several other items. Yvette provided the court with receipts for the urn, the cost of cremation, and the changing of the locks. Yvette also produced a certificate of appraisal for one diamond ring worth $640 and a cello worth $2,500. She testified that several other items were missing from the home, including additional diamond rings, a violin, paintings, and silver dollars. However, she was unable to find certificates of appraisal for those items.

Yvette further testified that during her infrequent visits to the house, she turned off the lights and the thermostat because she believed the house to be empty. She explained that the price of utilities went up after Shoatz began residing in the house. Yvette provided the court with utility bills from January, February, and March of 2024. When Shoatz's attorney informed Yvette that Shoatz was incarcerated starting on January 5, 2024, Yvette testified that there were other, unknown people — to whom she had not

granted entry — living at the house during that period. The trial court observed that, during these months, the house was deeded to Shoatz.

The court questioned Yvette about the time she personally spent dealing with the consequences of Shoatz's criminal actions. Yvette testified that she spent twenty or thirty hours of her own time going to the house, speaking with lawyers, and otherwise handling the consequences of Shoatz's trespass and theft. Yvette also testified that she took two days off of work to come to court and had to use her accrued vacation time.

At the conclusion of the restitution hearing, the trial court ordered Shoatz to pay an aggregate sum of $12,715.11 in restitution, allocating $10,111.15 to the estate and $2,603.96 to Yvette. With respect to the $10,111.15 restitution amount due to the estate, the court explained that this sum consisted of: (1) $640 - the value of a diamond ring; (2) $2,500 – the value of the cello; (3) $2,971.15 – the value of utilities for the months of February, March, and April 2024; and (4) $4,000 for attorney's fees for the civil action to quiet title (including a $3,250 invoice and $750 in expected future attorney's fees to enforce the judgement). *See* N.T., 6/14/24, at 53-55. With respect to the $2,603.96 restitution amount due to Yvette, the court explained that this sum consisted of: (1) $118.96 paid for changed locks; (2) $1,635 for the urn and cremation costs; (3) $675 for twenty-five hours of her time spent on dealing with the fraudulent transfer multiplied by her hourly salary at her job; and (4) $175 for reimbursement of a vacation day to attend

court. *See id*. On that same date, the trial court entered an amended sentencing order which reflected the total amount of restitution, as well as the breakdown of the amounts to be paid to the estate and to Yvette. *See* Amended Order of Sentencing, 6/14/24, at 1. However, once again, the trial court did not specify — either at the restitution hearing or in its amended sentencing order — whether the restitution was to be imposed at part of Shoatz's sentence or as a condition of his probation.

Shoatz filed a timely post-sentence motion challenging the order of restitution, which was denied by operation of law. Shoatz thereafter filed a timely notice of appeal, and both he and the trial court complied with Pa.R.A.P. 1925.

Shoatz raises the following issues for our review:

A. Did the trial court's entire restitution order constitute an illegal condition of probation under 42 Pa.C.S.[A.] § 9763, as the court failed to consider Mr. Shoatz's ability to pay, as required by the statute?

B. Was the trial court's order of $4,000 restitution for attorneys' fees illegal under either § 9763 or 18 Pa.C.S.[A.] § 1106, as neither statute authorizes a court to impose restitution for such fees?

C. Even if the trial court invoked § 1106, rather than § 9763, in ordering restitution for the remaining items—property stolen from the house, cremation expenses, utilities and the complainant's time—those items fall outside the scope of § 1106.

Shoatz's Brief at 2-3.

A challenge to the authority of the trial court to impose an order of restitution is a challenge to the legality of sentence. *See Commonwealth v. Royal*, 312 A.3d 317, 325 (Pa. Super. 2024); *see also Commonwealth v. Risoldi*, 238 A.3d 434, 461 n.23 (Pa. Super. 2020) (holding that a challenge to the trial court's authority to impose a sentence of restitution based on its finding that the restitution was a direct result of the criminal conduct is a challenge to the legality of the sentence"). When presented with a challenge to the legality of a sentence, our standard of review is *de novo* and our scope of review is plenary. *See Royal*, 312 A.3d at 325.

A sentencing court may impose restitution as a sentence, pursuant to 18 Pa.C.S.A. § 1106, or as a condition of probation pursuant to 42 Pa.C.S.A. § 9754(b). When restitution is imposed as part of a direct sentence, section 1106 mandates that courts shall sentence offenders to make restitution in certain cases of injury to persons or property. *See* 18 Pa.C.S.A. § 1106(a). Such restitution is limited to direct victims of the crime and requires a direct nexus between the loss and the amount of restitution. *See Commonwealth v. Whatley*, 221 A.3d 651, 653-54 (Pa. Super. 2019). Section 1106 requires that, "[a]t the time of sentencing the court shall specify the amount and method of restitution." 18 Pa.C.S.A. § 1106(c)(2).

However, when restitution is imposed as a condition of probation pursuant to section 9754, its purpose is to rehabilitate the defendant and provide some redress to the victim. *See Commonwealth v. Harner*, 617

A.2d 702, 706 (Pa. 1992). Under section 9754, the sentencing court is given the flexibility to fashion the condition to rehabilitate the defendant. **See id**. Therefore, the requirement of a nexus between the loss and amount of restitution is relaxed. **See id**. Such sentences are encouraged, and give the trial court the flexibility to determine all the direct and indirect damages caused by a defendant, and permit the court to order restitution so that the defendant will understand the egregiousness of his conduct, be deterred from repeating this conduct, and be encouraged to live in a responsible way. **See id**. at 707. Notably, restitution imposed under section 9754 is unique in that it requires a court to explicitly consider a defendant's ability to pay. **See** 42 Pa.C.S.A. § 9754(c)(8) (providing that a court may, as a condition of probation, require the defendant "[t]o make restitution of the fruits of his crime or to make reparations, **in an amount he can afford to pay**, for the loss or damage caused thereby") (emphasis added).

When restitution is ordered under section 1106(a) and an offender has been placed on probation or parole, restitution also may be ordered as a condition of such probation or parole. **See** 18 Pa.C.S.A. § 1106(b). Nonetheless, this restitution is still a condition of an offender's sentence as opposed to a condition of probation under section 9754. **See** **Commonwealth v. Holmes**, 155 A.3d 69, 87 n.11 (Pa. Super. 2017) (*en banc*) (Stabile, J., opinion in support of affirmance). If restitution must be

ordered as part of a sentence under section 1106(a), it cannot at the same time also be ordered as a condition under section 9754. ***See id***.

However, when restitution is imposed under either statute, the court must specify the method of payment at the sentencing hearing. ***See*** 18 Pa.C.S.A. § 1106(c)(2) (providing that, "[a]t the time of sentencing the court shall specify the amount and method of restitution"); ***see also Holmes***, 155 A.3d at 86 (holding that, upon ordering restitution as a condition of probation, the court must determine "how the restitution is to be paid"). A sentence intended to include restitution, which is entered without a definite amount and method of payment, is illegal and must be vacated in its entirety. ***See Commonwealth v. McCabe***, 230 A.3d 1199, 1209 (Pa. Super. 2020). Similarly, where a sentencing court fails to consider a defendant's ability to pay prior to imposing restitution as a probationary condition, the order of restitution constitutes an illegal sentence and must be vacated. ***See Whatley***, 221 A.3d at 654.

Based on our review of the record, it is unclear whether the trial court ordered restitution as a mandatory direct sentence or as a condition of Shoatz's probation. The trial court did not indicate the nature of the restitution imposed at the time of sentencing, at the restitution hearing, in the sentencing orders, or in its 1925(a) opinion. Thus, the record is silent as to whether the trial court was ordering the restitution as a way to rehabilitate Shoatz, or as a punishment for direct injuries to persons or property, or potentially some of

each. Therefore, our ability to review the merits of Shoatz's challenges to the legality of restitution is impeded by our inability to ascertain the applicable statutory framework.

Nonetheless, we conclude that the order of restitution is illegal under either section 1106 or section 9754 because the trial court failed to specify a method of payment or determine Shoatz's ability to pay at the sentencing hearing. *See* N.T., 4/30/24, at 1-30; *see also McCabe*, 230 A.3d at 1209; *Whatley*, 221 A.3d at 654. Accordingly, we are constrained to vacate the judgment of sentence and remand for resentencing. Upon remand, the trial court must make an on-the-record determination as to whether restitution is being imposed as a separate sentence, in accordance with section 1106, or as a condition of probation, in accordance with section 9754. The court must also specify both the amount of restitution and the method of payment at the sentencing hearing. Further, if the court imposes restitution as a condition of probation pursuant to section 9754, the court must also consider Shoatz's ability to pay.[4]

Judgment of sentence vacated. Case remanded. Jurisdiction relinquished.

---

[4] Because we have determined the sentence is illegal, we need not reach the merits of Shoatz's other claims.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/14/2026